## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

HONORABLE JEFFREY P.                     :
MINEHART                                 :
        Plaintiff,                   :
                                         :            CIVIL ACTION
        v.                           :            No. 17-3349
                                         :
ANN MCELHINNY, et al.,                   :
                                         :
                                         :
        Defendants.                  :


**November 28, 2017**                                            **Anita B. Brody, J.**

<u>**MEMORANDUM**</u>

### I.     INTRODUCTION

Plaintiff Jeffrey P. Minehart, a judge in the Court of Common Pleas of Philadelphia County, filed suit in the same court against Defendants Ann McElhinny, Phelim McAleer, Ann & Phelim Media, Salem Media Group, Inc., Regnery Publishing and Pennsylvania Media Associates, Inc. (collectively, "Defendants").[1] Judge Minehart asserts claims against Defendants arising out of the publishing, marketing and distribution of a book that contains allegedly defamatory material. Defendants Salem Media Group, Inc. and Regnery Publishing removed the action to this Court, asserting that diversity jurisdiction exists because the sole non-diverse defendant, Pennsylvania Media Associates, Inc., was fraudulently joined.

Before this Court is Judge Minehart's Motion for Remand, which is opposed by all Defendants. Because Defendants have not met their burden of demonstrating that Pennsylvania

---

[1]Defendants Salem Media Group, Inc. and Regnery Publishing state in the Notice of Removal that the proper name for "Ann & Phelim Media" is "Ann and Phelim Media, LLC" and that Regnery is the registered trade name of Caron Broadcasting, Inc. Notice of Removal 1, ECF No. 1. For the present purposes, the names of the parties that appear in the Complaint will be used.

Media Associates, Inc. was fraudulently joined in this action, this Court does not have subject matter jurisdiction over this action. Therefore, I will grant Judge Minehart's Motion for Remand.

## II.    FACTS[2]

Judge Minehart, a citizen of Pennsylvania, is a judge of the Court of Common Pleas of Philadelphia County. Compl. ¶ 7. Judge Minehart presided over the trial of Kermit Gosnell, a physician who was convicted of murder in connection with his performance of illegal abortions and sentenced to life imprisonment. Compl. ¶¶ 45, 48-49, 61. Defendants McElhinny and McAleer wrote a book about Gosnell and his trial, titled: *Gosnell – The Untold Story of America's Most Prolific Serial Killer* ("*Gosnell* book"). Compl. ¶¶ 11, 64, 71. Defendant Ann & Phelim Media is a business that produces, promotes and distributes the work of Defendants McElhinny and McAleer. Compl. ¶ 10.

Defendant Salem Media Group, Inc. ("Salem") is a self-described radio, Internet and publishing company that specializes in themes related to "family, faith, news and culture." Compl. ¶ 96. Defendants Regnery Publishing ("Regnery") and Pennsylvania Media Associates, Inc. ("PMA") are subsidiaries of Salem. Compl. ¶¶ 18, 21. Salem uses its radio stations and websites to promote its various media interests, including Regnery. Compl. ¶ 98. In 2014, Salem stated that it would use its media platform to promote Regnery products. Compl. ¶ 100. Regnery is the publisher of the *Gosnell* book. Compl. ¶ 17. PMA owns seven radio stations in Pennsylvania, all of which actively promoted the *Gosnell* book, either by conducting interviews of the authors or by sponsoring book signing events. Compl. ¶¶ 102, 111. PMA promoted the

---

[2] The facts are presented as alleged in the Complaint (ECF No. 1-4). In resolving a motion to remand in the context of fraudulent joinder, district courts are instructed to assume all factual allegations in the Complaint are true. *Batoff v. State Farm Ins. Co.*, 977 F.2d 848, 851-52 (3d Cir. 1992).

*Gosnell* book at the direction of Salem and in direct coordination with Regnery personnel. Compl. ¶ 137. The parties agree that PMA is the only Defendant that is a citizen of Pennsylvania. Compl. ¶¶ 8-10, 14-15, 19; Notice of Removal ¶ 16.

Defendants have a conservative audience and had a common purpose of authoring, publishing, promoting and distributing a book that appealed to this audience. Compl. ¶ 211. Defendants Salem, Regnery and PMA additionally had a common purpose of promoting, distributing, selling, and increasing awareness of, the *Gosnell* book in order to increase Salem's revenue and profits. Compl. ¶¶ 214-15. The *Gosnell* book makes false statements of fact about Judge Minehart and the trial of Gosnell, including that Judge Minehart restricted media access to the trial and exhibited favoritism towards Gosnell's attorney. Compl. ¶¶ 74, 86-87. Defendants knew or should have known that the statements about Judge Minehart in the *Gosnell* book were false. Compl. ¶ 212. In an effort to pursue the common purpose of authoring, publishing, promoting and distributing a book that appealed to their conservative audience, Defendants ignored the truth, failed to investigate the truth and/or purposefully made false statements about Judge Minehart with malice and without legal justification. Compl. ¶ 213. As a direct and proximate result of Defendants' publication, marketing, promotion and distribution of the *Gosnell* book, Judge Minehart has suffered irreparable reputational damage, emotional and psychological harm and loss of future earning capacity. Compl. ¶¶ 217-18.

In the Complaint, Judge Minehart asserts claims of defamation, false light, mandatory permanent injunction and civil conspiracy. Only the latter two claims are asserted against PMA. The only claim at issue in the Motion for Remand is the claim of civil conspiracy.[3]

_____

[3] Judge Minehart does not rely on his claim of mandatory permanent injunction in seeking remand.

### III.  LEGAL STANDARD

### A.  Diversity Jurisdiction

Federal courts have subject matter jurisdiction over claims involving citizens of different states in which the amount in controversy exceeds the sum or value of $75,000, exclusive of interest and costs.  28 U.S.C. § 1332(a).  A defendant has the right to remove a civil action from state court if the case could have originally been brought in federal court.  28 U.S.C. § 1441(a).  When removal is predicated upon diversity of citizenship, the exercise of federal jurisdiction requires that every plaintiff must be of a diverse state citizenship from every defendant.  *In re Briscoe*, 448 F.3d 201, 215 (3d Cir. 2006).

The doctrine of fraudulent joinder is an exception to this requirement of complete diversity between the parties.  *Id.* at 215-16.  In a suit in which all of the defendants are not diverse from the plaintiff, the diverse defendant may remove the action to federal court if it can establish that the non-diverse defendants were "fraudulently" named or joined in the suit solely to defeat diversity jurisdiction.  *Id.* at 216.  If it is found that the non-diverse defendants were fraudulently joined, the court may disregard the citizenship of the non-diverse defendants, assume jurisdiction over the case, dismiss the non-diverse defendants, and thereby retain jurisdiction.  *Id.*  If the court determines that it does not have subject matter jurisdiction over the removed action because the joinder was not fraudulent, it must remand the action to state court.  *Id.*

### B.  The Fraudulent Joinder Inquiry

"Joinder is fraudulent 'where there is no reasonable basis in fact or colorable ground supporting the claim against the joined defendant, or no real intention in good faith to prosecute the action against the defendants or seek a joint judgment.'"  *Batoff v. State Farm Ins. Co.*, 977

F.2d 848, 851 (3d Cir. 1992) (quoting *Boyer v. Snap-on Tools Corp.*, 913 F.2d 108, 111 (3d Cir. 1990)).  A claim is not colorable if it is "wholly insubstantial and frivolous." *Batoff*, 977 F.2d at 852.

In determining whether a defendant was fraudulently joined, district courts "must not step 'from the threshold jurisdictional issue into a decision on the merits.'" *In re Briscoe*, 448 F.3d at 219 (quoting *Boyer*, 913 F.2d at 112).  The inquiry into whether joinder was fraudulent is less searching than an inquiry into the validity of a complaint triggered by a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6).  *Batoff*, 977 F.2d at 852.  A claim against a party may be "colorable" under a fraudulent joinder analysis and subsequently dismissed for failure to state a claim upon remand.  *Id.* at 852-53.  If there is even a possibility that a state court would find that the complaint states a cause of action against a non-diverse defendant, then the federal court must find the joinder to be proper and remand the case to state court.  *Boyer*, 913 F.2d at 111.

The removing party bears a "heavy burden of persuasion" in showing that the non-diverse party was fraudulently joined and the removal statutes "are to be strictly construed against removal and all doubts should be resolved in favor of remand." *Batoff*, 977 F.2d at 851 (internal quotation marks and citations omitted).  A district court must assume all factual allegations in the complaint are true and must resolve all uncertainties as to the current state of controlling substantive law in favor of the plaintiff.  *Id.* at 851-52.

## IV.    DISCUSSION

In the Opposition to the Motion for Remand,  Defendants articulate three arguments in support of their claim that PMA was fraudulently joined and federal jurisdiction therefore exists over this action.  *See* Defs.' Opp. to Pl.'s Motion to Remand 2-4, ECF No. 23.  Defendants argue that the Complaint does not establish a colorable claim of civil conspiracy because it fails to

allege an "actionable agreement" or the required malice under Pennsylvania law.[4]  Additionally, Defendants argue that Judge Minehart has no real intention of prosecuting his claim against, or seeking a judgment from, PMA.  Finally, Defendants argue that First Amendment considerations render remand inappropriate. Always keeping in mind that Defendants bear a "heavy burden of persuasion" in showing fraudulent joinder, each of these arguments will be addressed in turn. *Batoff*, 977 F.2d at 851.

### A.  Claim of Civil Conspiracy

Defendants contend that there is no colorable claim of civil conspiracy against PMA.  As explained below, the claim of civil conspiracy is "colorable," even if it may ultimately be dismissed upon remand.

"In Pennsylvania, 'to state a cause of action for civil conspiracy, the following elements are required: (1) a combination of two or more persons acting with a common purpose to do an unlawful act or to do a lawful act by unlawful means or for an unlawful purpose; (2) an overt act done in pursuance of the common purpose; and (3) actual legal damage.'"  *Gen. Refractories Co. v. Fireman's Fund Ins. Co.*, 337 F.3d 297, 313 (3d Cir. 2003) (quoting *Strickland v. Univ. of Scranton*, 700 A.2d 979, 987-88 (Pa. Super. Ct. 1997)).  "Proof of malice, i.e., an intent to injure, is essential in proof of a conspiracy."  *Thompson Coal Co. v. Pike Coal Co.*, 412 A.2d 466, 472 (Pa. 1979).  Allegations of parallel conduct alone are insufficient.  *Petula v. Mellody*, 588 A.2d 103, 107 (Pa. Commw. Ct. 1991).  A civil conspiracy becomes actionable when some overt act is done in pursuance of the common purpose of the conspirators, and actual legal damage results. *Cohen v. Pelagatti*, 528 A.2d 657, 658 (Pa. Super. Ct. 1987).

---

[4] Although the Complaint itself does not state which of the two predicate torts (defamation and false light) is alleged to underlie the civil conspiracy claim, the Motion for Remand articulates that the civil conspiracy claim is for a conspiracy to defame. Mot. for Remand 6, ECF No. 21.

Defendants argue that the Complaint fails to plead that PMA agreed to engage in a conspiracy to defame Judge Minehart. In *Smith v. Wagner*, the Pennsylvania Superior Court held that allegations of civil conspiracy similar to those at issue here were sufficient to state a cause of action for civil conspiracy. 588 A.2d 1308, 1311 (Pa. Super. Ct. 1991). In *Smith*, the plaintiff was a county official who claimed that he was defamed by various publications of a newsletter and that there was a conspiracy to injure him and damage his career by those who authored, printed, compiled and aided in the distribution of the newsletter. *Id.* at 1310. The complaint alleged that the conspiracy became manifest when the first edition of the newsletter was printed and the newsletter itself stated that its intent was to undermine the plaintiff's economic interests and political career. *Id.* at 1312. The Superior Court stated that "[w]hile it is not improper to criticize politicians and local officials publicly in an attempt to improve government, it is improper to engage in a concerted effort to destroy someone's reputation and career by publishing defamatory statements." *Id.* The Superior Court held that the plaintiff's complaint was sufficient to state a claim of civil conspiracy and survive dismissal. *Id.* at 1311-12.

In the present case, the Complaint alleges that PMA, acting at the direction of Salem and in direct coordination with Regnery personnel, promoted a book that PMA and the other Defendants knew or should have known contained false statements about Judge Minehart, and that in an effort to promote the book, PMA and the other Defendants ignored the truth, failed to investigate the truth, and/or purposely made false statements about Judge Minehart. The allegation of an agreement is bolstered by Salem's previous public statement that it would use its media platform to promote Regnery products. Although there is no explicit statement in the *Gosnell* book of a defamatory purpose, the decision in *Smith* to uphold a claim of civil

conspiracy against individuals who compiled and distributed an allegedly defamatory publication leads to the conclusion that the claim against PMA is not "wholly insubstantial and frivolous." *Batoff*, 977 F.2d at 852.

Next, Defendants argue that Judge Minehart has not pled a colorable claim of civil conspiracy because he has not alleged that the only purpose of the conspiracy was to cause him injury. Defendants point to cases in this district that have held that proof of malice in a claim of civil conspiracy requires that the "sole purpose" of the civil conspiracy be to injure the plaintiff. Defendants also cite to the Third Circuit's decision in *Batoff* which noted that an employee may conspire with his employer "if he acted solely to cause [Plaintiff] harm and not in any legitimate business interest." 977 F.2d at 852.

However, other district court decisions have expressed doubt as to whether, under Pennsylvania law, the "sole purpose" of a civil conspiracy must be to injure the plaintiff. Judge Restrepo, in a district court opinion, noted in *Ozburn-Hessey Logistics, LLC v. 721 Logistics, LLC*, that the "sole purpose" pleading requirement arises from the Pennsylvania Supreme Court's decision in *Thompson Coal Co.*, and that this decision may not in fact articulate such a requirement. 40 F. Supp. 3d 437, 454 n.4 (E.D. Pa. 2014). Judge Restrepo notes that *Thompson Coal Co.* actually requires an "intent to injure" that lacks justification, and that acting "solely" to advance one's own legitimate business interests constitutes justification, whereas merely acting to injure the plaintiff is not justified. *Id.* However, Judge Restrepo noted that "*Thompson* does not address whether defendants may be liable if they act with mixed motives." *Id.*

Additionally, in *Daniel Boone Area Sch. Dist. v. Lehman Bros., Inc.*, the court rejected the defendant's argument that the plaintiff's claim of civil conspiracy should be dismissed because the defendant did not act with the sole purpose of injuring the plaintiff. 187 F. Supp. 2d

400, 411-12 (W.D. Pa. 2002). In *Daniel Boone*, the plaintiff alleged that Lehman Brothers sold securities to an investor, who was acting on behalf of the plaintiff, even though Lehman Brothers knew that such investments were not authorized under Pennsylvania law. *Id.* at 403. The court stated that "[t]he language in *Thompson Coal* on which Lehman relies is a characterization of evidence adduced at the summary judgment stage, and the import of that language is that, as a matter of fact, there was no malice in that case because the defendant was acting for its own legitimate business purposes and any injury to the plaintiff was a mere secondary and unintended effect of the otherwise proper conduct." *Id.* at 411-12. The court stated that the plaintiff alleged that Lehman Brothers knew the investor's actions were unlawful, and from this allegation it could be inferred that the plaintiff's injuries "not simply an accidental side-effect of Lehman['s] otherwise legitimate business interests." *Id.* at 412. The court held that at the motion to dismiss stage, the plaintiff had adequately alleged malice, and the allegation was sufficient to state a claim of civil conspiracy. *Id.*

Judge Minehart's claim of civil conspiracy is colorable under either the *Ozburn-Hessey* or *Daniel Boone* interpretation of the *Thompson Coal Co.* malice requirement. While Judge Minehart does assert numerous goals of the conspiracy that may constitute "legitimate business interests," he also asserts that PMA promoted a book that it knew or should have known contained false statements of fact and that PMA ignored the truth, failed to investigate the truth and/or purposely made false statements about him with malice and without legal justification. Therefore, pursuant to *Ozburn-Hessey*, the Complaint plausibly alleges that one of the motives of the conspiracy was to injure Judge Minehart. Likewise, under the *Daniel Boone* interpretation of *Thompson Coal Co.*, the Complaint plausibly alleges malice because it can be inferred that Judge Minehart's injuries "were not simply an accidental side-effect" of PMA's otherwise

legitimate business interests because PMA allegedly promoted a book that it knew contained false statements about Judge Minehart. *Daniel Boone*, 187 F. Supp. 2d at 412. It should also be noted that the Third Circuit in *Batoff* did not squarely address whether the "sole purpose" of a civil conspiracy must be to cause the plaintiff harm, and also did not address whether a defendant in a civil conspiracy may act with mixed motives.

It is Defendants' "heavy burden" to show fraudulent joinder and the Court must resolve all uncertainties as to the current state of controlling substantive law in favor of Judge Minehart. *Batoff*, 977 F.2d at 851-52. The Complaint's allegations of malice may be sufficient under state law. Although the doubt created by *Ozburn-Hessey* and *Daniel Boone* as to the "sole purpose" test may not be sufficient to allow this claim to survive dismissal upon remand, at the fraudulent joinder inquiry, it creates enough of an uncertainty as to the substantive state law that the Court cannot find that the claim of civil conspiracy is "wholly insubstantial and frivolous." *Batoff*, 977 F.2d at 852-53. Therefore, although the claim of civil conspiracy against PMA may not ultimately survive dismissal upon remand, the claim is "colorable."

### B. Intention of Prosecuting Claim Against, Or Seeking Judgment From, PMA

Defendants next argue that the joinder of PMA was fraudulent because Judge Minehart does not intend to prosecute the action against PMA or seek a judgment from PMA. Defendants offer two principal reasons for this contention.[5]

First, Defendants state that Judge Minehart can obtain complete relief for his alleged damages from PMA's related corporate entities, Salem and Regnery. However, besides citing to

---

[5] In a footnote, Defendants state that the reason Judge Minehart sued PMA and not any of Salem's non-Pennsylvania entities was because "only PMA defeats this Court's diversity jurisdiction." Defs.' Opp. 15 n.6. Defendants do not provide any factual support in support of this bald statement, and it is therefore unpersuasive.

a California district court case addressing a different procedural question,[6] Defendants offer no explanation as to why Judge Minehart's purported ability to recover in full from other Defendants demonstrates that Judge Minehart does not intend to pursue his claim against, or seek a judgement from, PMA.

Second, Defendants argue that Judge Minehart's decision to pursue PMA was an afterthought because Judge Minehart's counsel sent a Notice of Claims letter, which expressed concerns about the promotion of the book, to Defendants McElhinny, McAleer, Ann & Phelim Media and Regnery, but not to PMA. Defendants argue that this conduct demonstrates that Judge Minehart has never intended to seek any relief from PMA, and that PMA was only added when Judge Minehart sought to pursue a case in state court. In support of this argument, Defendants cite to *In re Zoloft (Sertraline Hydrochloride) Prods. Liab. Litig.*, in which a court in this district found a lack of intent to prosecute the claims against the non-diverse defendant and dismissed the defendant as fraudulently joined. MDL No. 2342, 2017 WL 2653258, at *4 (E.D. Pa. June 20, 2017). However, the factual scenario in *Zoloft* is materially distinct from this case. In *Zoloft*, the court examined the claims brought against the non-diverse defendant in a case that was part of a MDL in which the same non-diverse defendant had been named as a defendant in numerous other cases. *Id.* at *3. The court considered the actions of the other MDL plaintiffs and was aware of no instance in which the plaintiffs had propounded meaningful discovery on the non-diverse defendant and found that "numerous" plaintiffs had dismissed the non-diverse

---

[6] Defendants cite to *Buttons v. Nat'l Broad. Co.*, in which a California district court declined to permit the joinder of non-diverse defendants, noting that "the primary motive in plaintiff's seeking to amend his complaint to add these new defendants is to destroy diversity" and the plaintiff could sue the defendants separately in state court. 858 F. Supp. 1025, 1027 (C.D. Ca. 1994). The *Buttons* determination was one "within the sound discretion of the court" and the court determined that "*[p]laintiff* has not made out a strong case for joinder." *Id.* (emphasis added). By contrast, the burden here is on Defendants to demonstrate fraudulent joinder and the court's determination is not discretionary.

defendant from their actions. *Id.* This pattern of lack of prosecution, coupled with non-specific allegations against the non-diverse defendant, led the court to determine that the plaintiffs in *Zoloft* lacked a good faith intent to prosecute their claims against the non-diverse defendant. *Id.* at *4. Here, unlike in *Zoloft*, there is no consistent pattern of lack of prosecution of PMA. Defendants have therefore not shown why Judge Minehart's failure to send a pre-Complaint letter to PMA (which was also not sent to Defendant Salem) demonstrates a lack of a good faith intent to prosecute the claim against, or seek a judgment from, PMA.

Thus, Defendants have not shown a lack of intent by Judge Minehart to pursue his claims against, or seek a judgment from, PMA.

### C. First Amendment Considerations

Finally, Defendants state that First Amendment considerations demonstrate that this case should remain in federal court. The principal argument put forth by Defendants is that Judge Minehart must allege that PMA acted with "actual malice," the standard the Supreme Court has applied to public officials bringing claims for defamation.[7] Defendants argue that although PMA is not accused of defamation, Judge Minehart should not be able to avoid the heightened standard applied to defamation claims through pleading that PMA was part of a conspiracy to defame.

Defendants state that "[c]ourts have denied motions to remand in strikingly similar circumstances when plaintiffs have sought to defeat diversity in defamation cases by adding defendants whose only connection to the cases were their post-publication role in disseminating the alleged defamatory material." Defs.' Opp. 19. In support of this statement, Defendants cite

---

[7] The Supreme Court has held that the First Amendment requires that public officials only be allowed to recover damages for a defamatory falsehood relating to his official conduct if the official proves that the defamatory statement was made with "actual malice." *New York Times Co. v. Sullivan*, 376 U.S. 254, 279-80 (1964). Actual malice requires that the defamatory statement was made "with knowledge that it was false or with reckless disregard of whether it was false or not." *Id.* at 280.

to three district court decisions in the Ninth and Tenth Circuits. However, in each of these cases, the courts applied a more searching inquiry into the plaintiff's claims than is permitted in the Third Circuit.

The primary case relied upon by Defendants is *Lewis v. Time Inc.*, in which a court in the Eastern District of California rejected what it described as the "all doubts resolved in favor of remand rule" where a "serious" claim of fraudulent joinder is raised in an action implicating the First Amendment. 83 F.R.D. 455, 462 (E.D. Ca. 1979). The court instead held that "[t]he proper course where a strong claim of fraudulent joinder is made in a case implicating First Amendment rights is for the court to retain jurisdiction for the present without prejudice to plaintiff's right to move for remand at any point in the litigation when it can be demonstrated that the cause of action which is assertedly without substance is in fact a viable claim." *Id.* at 462. The Third Circuit, by contrast, has explicitly stated that "all doubts should be resolved in favor of remand," which is the standard that *Lewis* rejects. *Batoff*, 977 F.2d at 851 (internal quotations and citations omitted). Likewise, Defendants' citation to *Medical Lab. Mgmt. Consultants v. Am. Broad. Cos.*, is inapposite, because the court there found the fraudulent joinder of the non-diverse defendant on the basis of a summary judgment determination against the non-diverse defendant, an inquiry specifically rejected by the Third Circuit. 931 F. Supp. 1487, 1491-92 (D. Ariz. 1996). *See Boyer*, 913 F.2d at 112 (district court's summary judgment type inquiry impermissibly reached decision on the merits). Finally, Defendants cite to *Dworkin v. Hustler Magazine, Inc.*, in which a court in the district of Wyoming found the fraudulent joinder of a non-diverse defendant who distributed allegedly defamatory material on the basis of the defendant's lack of the requisite scienter. 611 F. Supp. 781, 786 (D. Wyo. 1985). However, *Dworkin* based its determination regarding scienter on the plaintiffs' failure to provide evidence

of the requisite scienter, the deposition and affidavit of the non-diverse defendant's president and the court's determination that other evidence did not demonstrate scienter. *Id.* at 786-87. While the Third Circuit has allowed a court to look to more than just the pleading allegations to identify indicia of fraudulent joinder, it has cautioned that "a district court must not step 'from the threshold jurisdictional issue into a decision on the merits.'" *In re Briscoe*, 448 F.3d at 219 (quoting *Boyer*, 913 F.2d at 112). The court in *Dworkin*, in basing its decision on evidence rather than on the allegations, likely reached what would be an impermissible merits determination in the Third Circuit.

In the Third Circuit, a court's inquiry into the sufficiency of a plaintiff's claims against a purportedly fraudulently joined defendant is limited to whether the claims are "wholly insubstantial and frivolous." *Batoff*, 977 F.2d at 852. Defendants have not persuasively shown that an inquiry into whether Judge Minehart has adequately alleged "actual malice" is appropriate at the fraudulent joinder inquiry nor that Judge Minehart's purported failure to plead actual malice renders his claim of civil conspiracy "wholly insubstantial and frivolous."[8] Therefore, the purported First Amendment considerations do not render remand inappropriate.

## V. CONCLUSION

Because Judge Minehart's claim of civil conspiracy is colorable and Defendants have not shown that Judge Minehart does not intend to pursue his claim against, or seek a judgment from, PMA, Defendants have not met their "heavy burden" of demonstrating that PMA was

---

[8] It should be noted that the Complaint alleges that the Defendants' conduct was "done with actual malice." Compl. ¶ 219.

fraudulently joined.  Because PMA was not fraudulently joined, this Court lacks subject matter jurisdiction over this action.  Therefore, I will grant Judge Minehart's Motion for Remand.[9]


s/Anita B. Brody

_____
ANITA B. BRODY, J.


Copies **VIA ECF** on _____ to:

---

[9] Judge Minehart's request for an award of costs in fees for the preparation, filing and prosecution of the Motion for Remand will be denied.  *See* Mot. for Remand 5 n.1.