## THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

|  |  |  |
|---|---|---|
| HONORABLE JEFFREY P. MINEHART, | : | Civil Action No. 17-cv-3349 |
| Plaintiff, | : | |
| v. | : | District Judge Anita Brody |
| ANN MCELHINNEY, *et al.*, | : | |
| Defendants. | : | |

## DEFENDANTS' MEMORANDUM OF LAW IN
## SUPPORT OF THEIR SPECIAL MOTION TO STRIKE THE
## <u>COMPLAINT PURSUANT TO CALIFORNIA'S ANTI-SLAPP LAW</u>

**FOX ROTHSCHILD LLP**
Michael K. Twersky
2000 Market Street, 20th Floor
Philadelphia, PA 19103
Telephone: (215) 299-2000
Fax: (215) 299-2150
mtwersky@foxrothschild.com

Jonathan D. Christman
Benjamin H. McCoy
10 Sentry Parkway
Suite 200, P.O. Box 3001
Blue Bell, PA 19422
Fax: (610) 397-0450
jchristman@foxrothschild.com
bmccoy@foxrothschild.com

*Attorneys for Defendants*
*Regnery Publishing and*
*Salem Media Group, Inc.*

**BALLARD SPAHR LLP**
Michael Berry
Paul J. Safier
Elizabeth Seidlin-Bernstein
1735 Market Street, 51st Floor
Philadelphia, PA 19103-7599
Telephone: (215) 665-8500
Fax: (215) 864-8999
berrym@ballardspahr.com
safierp@ballardspahr.com
seidline@ballardspahr.com

*Attorneys for Defendants Ann McElhinney,*
*Phelim McAleer, and Ann & Phelim Media*

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ......................................................................................... ii

PRELIMINARY STATEMENT ...................................................................................... 1

BACKGROUND ............................................................................................................ 2

ARGUMENT .................................................................................................................. 6

I.     THE PROTECTIONS OF CALIFORNIA'S ANTI-SLAPP LAW
       APPLY TO DEFENDANTS. ................................................................................. 6

       A.    California's Anti-SLAPP Law .............................................................. 6

       B.    Pennsylvania's Choice-of-Law Rules ................................................. 7

       C.    This Issue Presents A False Conflict Because California's Interest Would
           Be Harmed If Its Law Were Not Applied To The Anti-SLAPP Issue,
           While Pennsylvania's Interest In Its Law Would Not Be Affected. ....................... 11

       D.    California Law Should Apply To The Anti-SLAPP Issue Even If It Is
           Found To Create A True Conflict With Pennsylvania's Anti-SLAPP Law ......... 14

II.    DEFENDANTS ARE ENTITLED TO RELIEF UNDER CALIFORNIA'S
      ANTI-SLAPP LAW ........................................................................................... 18

       A.    Defendants Have Made Their Prima Facie Showing ............................. 18

       B.    Judge Minehart Cannot Meet His Burden Of Showing A Probability Of
           Prevailing On His Claims ...................................................................... 20

CONCLUSION .............................................................................................................. 21

# TABLE OF AUTHORITIES

**Page(s)**

**C**ASES

*Batzel v. Smith*,
   333 F.3d 1018 (9th Cir. 2003) ...........................................................................1, 7

*Berg Chilling Systems, Inc. v. Hull Corp.*,
   435 F.3d 455 (3d Cir. 2006)......................................................................................9

*Britts v. Superior Court*,
   52 Cal. Rptr. 3d 185 (Cal. Ct. App. 2006) ...........................................................12

*Chi v. Loyola University Medical Center*,
   787 F Supp. 2d 797 (N.D. Ill. 2011) ..............................................................16, 17

*Cox Broadcasting Corp. v. Cohn*,
   420 U.S. 469 (1975)...............................................................................................19

*DC Comics v. Pacific Pictures Corp.*,
   706 F.3d 1009 (9th Cir. 2013) .................................................................................7

*Diamond Ranch Academy, Inc. v. Filer*,
   117 F. Supp. 3d 1313 (D. Utah 2015)...............................................................16, 18

*Dick v. Lambert*,
   472 F. Supp. 560 (M.D. Pa. 1979)........................................................................14

*Equilon Enterprises, LLC v. Consumer Cause, Inc.*,
   52 P.3d 685 (Cal. 2002) ....................................................................................7, 12

*Francis v. Wynn Las Vegas, LLC*,
   557 F. App'x (9th Cir. 2014) .................................................................................17

*Gilead Sciences, Inc. v. Abbott Laboratories, Inc.*,
   2015 WL 1191129 (D. Del. Mar. 13, 2015) ...................................................18, 20

*Global Relief Foundation v. New York Times Co.*,
   2002 WL 31045394 (N.D. Ill. Sept. 11, 2002) .....................................................17

*Hammersmith v. TIG Insurance Co.*,
   480 F.3d 220 (3d Cir. 2007)....................................................................7, 9, 14, 15

*Harrisburg Authority v. CIT Capital USA, Inc.*,
   716 F. Supp. 2d 380 (M.D. Pa. 2010) ..................................................................10

*Inman v. Technicolor USA, Inc.*,
   2011 WL 5829024 (W.D. Pa. Nov. 18, 2011) .....................................................15

*Kearney v. Foley & Lardner*,
    553 F. Supp. 2d 1178 (S.D. Cal. 2008)..................................................................12

*Makaeff v. Trump University, LLC*,
    715 F.3d 254 (9th Cir. 2013) ...............................................................................18

*McSwain v. McSwain*,
    215 A.2d 677 (Pa. 1966) .........................................................................10, 11, 14

*Medifast, Inc. v. Minkow*,
    2011 WL 1157625 (S.D. Cal. Mar. 29, 2011) .......................................................19

*Mindys Cosmetics, Inc. v. Dakar*,
    611 F.3d 590 (9th Cir. 2010) ..........................................................................12, 18

*Pennsbury Village Associates, LLC v. McIntyre*,
    11 A.3d 906 (Pa. 2011) ......................................................................................8, 13

*Planned Parenthood of Central N.J. v. Farmer*,
    220 F.3d 127 (3d Cir. 2000)..................................................................................19

*Price v. Stossel*,
    620 F.3d 992 (9th Cir. 2010) ................................................................................18

*Racicot v. Erie Insurance Exchange*,
    881 A.2d 871 (Pa. Super. 2005).............................................................................9

*Sarpolis v. Tereshko*,
    625 F. App'x 594 (3d Cir. 2016) ...........................................................................21

*Sarver v. Chartier*,
    813 F.3d 891 (9th Cir. 2016) .....................................................................12, 13, 15

*Shepard v. Miler*,
    2010 WL 5205108 (E.D. Cal. Dec. 15, 2010) ......................................................19

*Smith v. Fireside Thrift Co.*,
    2007 WL 2729329 (N.D. Cal. Sept. 18, 2007) .....................................................12

*Specialty Surfaces International, Inc. v. Continental Casualty Co.*,
    609 F.3d 223 (3d Cir. 2010).................................................................................7, 8

*Stutzman v. Armstrong*,
    2013 WL 4853333 (E.D. Cal. Sept 10, 2013).......................................................19

*Taylor v. Mooney Aircraft Corp.*,
    265 F. App'x 87 (3d Cir. 2008) .....................................................................8, 9, 16

*Thomas v. Fry's Electronics, Inc.*,
    400 F.3d 1206 (9th Cir. 2005) ........................................................................18

*Varian Medical Systems, Inc. v. Delfino*,
    35 Cal. 4th 180 (2005) ..................................................................................7

*Vess v. Ciba-Geigy Corp. USA*,
    317 F.3d 1097 (9th Cir. 2003) ......................................................................18

*Wilson v. Slatalla*,
    970 F. Supp. 405 (E.D. Pa. 1997) ................................................................13

*Wolfe v. McNeil-PPC, Inc.*,
    703 F. Supp. 2d 487 (E.D. Pa. 2010) ........................................................8, 11

*Zavecz v. Yield Dynamics, Inc.*,
    179 F. App'x 116 (3d Cir. 2006) ..............................................................10, 11

**STATUTES**

27 Pa. Cons. Stat. § 8302 ...................................................................................8, 13

28 U.S.C. § 1332 ..................................................................................................15

Cal. Civ. Proc. Code § 425.16 .................................................................... *passim*

**OTHER AUTHORITIES**

RESTATEMENT (SECOND) OF CONFLICTS § 145 ..................................................11, 15

iv

Defendants Ann McElhinney, Phelim McAleer, Ann & Phelim Media, Salem Media Group, Inc. ("Salem"), and Regnery Publishing[1] ("Regnery") hereby file this memorandum of law in support of their special motion to strike Plaintiff Jeffrey P. Minehart's Complaint under California's anti-SLAPP law, Cal. Civ. Proc. Code § 425.16.

## PRELIMINARY STATEMENT

In this lawsuit, a sitting Pennsylvania state court judge has sued California residents and companies solely for their speech on matters of public interest. His suit fails to state a claim as a matter of law and is an affront to core First Amendment principles. Judge Minehart is attempting to use the court system to punish speech about his role as a judge and to obtain an injunction to shape his public image. Judge Minehart is doing so based on his unreasonable and forced interpretation of two fleeting passages in a 318-page book about Kermit Gosnell, the notorious abortion doctor over whose criminal trial he presided. Compl. ¶¶ 187, 190, July 27, 2017, Dkt. 1-4. As a result, Defendants find themselves subject to the significant burden and expense of defending against Judge Minehart's overreaching claims.

Defendants' home state of California vigorously protects its residents against lawsuits of precisely this kind. That policy is reflected in California's anti-SLAPP law,[2] which affords that state's residents immunity from meritless lawsuits directed toward speech on matters of public interest. It does so by making such suits subject to "a special motion to strike" that requires a plaintiff to demonstrate, at the outset of a case, "that there is a probability that [he or she] will prevail on the claim." Cal. Civ. Proc. Code § 425.16(b). If the plaintiff cannot meet that burden, then his complaint is struck, and the defendants are awarded their "attorney's fees and costs." *Id.*

---

[1] Regnery is a registered Trade Name of Caron Broadcasting, Inc. ("Caron") and is not a separate and distinct legal entity. *See* Henderson Decl. ¶ 6, July 27, 2017, Dkt. 1-14.

[2] SLAPP stands for "Strategic Lawsuits against Public Participation." *Batzel v. Smith*, 333 F.3d 1018, 1023-24 (9th Cir. 2003).

§ 425.16(c).  As the text of the statute explains, the law reflects California's concern "that there has been a disturbing increase in lawsuits brought primarily to chill the valid exercise of the constitutional rights of freedom of speech," and its related conviction that "it is in the public interest to encourage continued participation in matters of public significance, and that this participation should not be chilled through abuse of the judicial process."  *Id.* § 425.16(a).  That concern is squarely implicated here.

Accordingly, as California residents whose protected speech on matters of public interest is being targeted by Judge Minehart's lawsuit, Defendants are entitled to the special protections their state affords them by way of its anti-SLAPP law.  Under Pennsylvania's choice-of-law rules, which assess the strength of a state's interest in applying its law to each discrete issue in a case, Defendants are entitled to the immunity afforded by their home state.  And, because Judge Minehart cannot demonstrate a probability of success on the merits, his Complaint should be stricken, and Defendants should be awarded their costs and attorney's fees.

## BACKGROUND

This lawsuit arises out of the book *Gosnell: The Untold Story of America's Most Prolific Serial Killer* ("the "Book").  *See, e.g.*, Compl. ¶¶ 11, 62-94, 188, 194, 203, 211; *see also id.* Ex. 1 (B) (complete copy of Book).[3]  Ms. McElhinney and Mr. McAleer are the authors of the Book, while Ann and Phelim Media, LLC (sued as "Ann & Phelim Media") is their company.  Compl. ¶¶ 10-11, 13; McElhinney Decl. ¶ 2; McAleer Decl. ¶ 2.  Each of the authors is a resident of California.  Compl. ¶¶ 8-10; McElhinney Decl. ¶ 1; McAleer Decl. ¶ 1.  While Ms. McElhinney and Mr. McAleer conducted some research for portions of the Book in Pennsylvania, the Book was written in California.  McElhinney Decl. ¶ 4; McAleer Decl. ¶ 4.  The Book was published

---

[3] Defendants have (with Judge Minehart's consent) provided the Court with hard copies of the Book.

by Regnery, which is an Ohio corporation with its principal place of business in California. *See* Henderson Decl. ¶¶ 5-6. Salem, Regnery's parent company, is a public corporation whose principal place of business is in California. *See* Notice of Removal ¶ 18, July 27, 2017, Dkt. 1; Compl. ¶ 14.

As its title indicates, the Book tells the story of Kermit Gosnell, the notorious abortion doctor who was convicted of murder and sentenced to life without the possibility of parole. Through Gosnell's story – and, in particular, the story of his rise and then subsequent criminal investigation, trial, and sentencing – the Book contributes to the national conversation about abortion. *See, e.g.*, Book at xvii-xx (Preface of the Book, describing one of the authors' reactions to the events described in the Book and objectives in writing the Book). In the course of telling that story, the Book singles out two sets of actors for criticism. First, the Book criticizes people and entities – like the Pennsylvania Departments of State and Health, police, and even some in the medical community – whom the Book posits could have, and should have, stopped Gosnell long before he was arrested and his clinic shut down. *See, e.g.*, Compl. ¶ 68 (quoting Book at p. 65); Book at 59-98 (chapter entitled "Dereliction of Duty"). Second, the Book criticizes the national media, which it accuses of ignoring Gosnell's prosecution and trial due to its liberal views about abortion, which the Book suggests caused the national media to fail to appreciate the wider significance of the Gosnell case to the national debate over abortion. *See, e.g.*, Book at 243-67 (chapter titled "Media Malpractice").

Judge Minehart is a Judge on the Court of Common Pleas of Philadelphia County. Compl. ¶ 7. He presided over Gosnell's criminal trial, and his conduct of that trial is discussed in the Book. *Id.* ¶¶ 56-61. As the Book recounts, by the time Judge Minehart entered the Gosnell story, the long history of state administrative officials failing to detect Gosnell's crimes

had passed, and the various bureaucratic obstacles to investigating and prosecuting him already had been surmounted. The Book describes the Judge's rulings and demeanor throughout the trial and makes clear that the trial over which he presided resulted in an outcome that the Book's authors unambiguously consider just – the conviction of Gosnell on first-degree murder charges and his subsequent sentence of life without the possibility of parole. *See, e.g.*, Book at 133 (describing Judge Minehart's interjecting to ensure jury understood key witness testimony about what occurred in Gosnell's clinic); *id.* at 167 (describing Judge Minehart's questioning a witness to clarify testimony important to understanding Gosnell's practices); *id.* at 239-41 (describing the verdict and subsequent sentencing).

Nonetheless, Judge Minehart has brought this lawsuit, claiming that the Book defamed him and cast him in a false light. His claims arise from two isolated passages. First, he challenges a paragraph in the Book briefly recounting initial misgivings some on the prosecution team expressed about him before the trial:

> In addition to the benefit of a pro-abortion jury, Gosnell was lucky in the judge assigned to the case. In Philadelphia, as in most of the country, judges are selected at random to avoid any appearance of favoritism or conflict of interest. The prosecution team was dismayed to learn that Judge Jeffrey Minehart would preside over the case. Minehart was a former prosecutor; before he was appointed to the bench, in fact, he had been Ed Cameron's supervisor in the DA's office. But the two men never had more than a friendly working relationship. On the other hand, Minehart and Jack McMahon, Gosnell's lawyer, were drinking buddies. And Minehart had a reputation among prosecutors for being too easy on defendants and allowing defense lawyers entirely too much leeway. No one connected to the investigation would say so on the record, but some were genuinely concerned that the judges' friendship with the defense attorney would hurt their case.

Compl. ¶ 71 (quoting Book at 179-80) (emphasis omitted).

Second, Judge Minehart challenges a short passage from a chapter titled "Media Malpractice" that is dedicated to criticizing the national media's failure to cover the case:

> Local Philadelphia-area reporter J.D. Mullane of the Bucks County Courier Times
> took a picture of the empty section reserved for journalists the day [a column by
> Kristin Powers of USA Today] appeared. He was risking contempt of the Court –
> Judge Minehart had banned all cameras from the courtroom, but the picture sent a
> powerful message. Mullane tweeted it, and it very quickly travelled.

*Id.* ¶ 86 (quoting Book at 256) (emphasis omitted). An earlier passage that discusses the same

photograph describes it as the "famous photograph of the empty courtroom," and states that it

was "tweeted out" by J.D. Mullane "to demonstrate the blackout of the case by the national

media," Book at 83, and not some concocted claim that Judge Minehart was trying to keep the

press and public from the trial, *id.* at 256 (noting section of court reserved for journalists).

In his Complaint, Judge Minehart asserts that those two isolated passages portray him as:

- having "broke[n] the law, violated his oath office, and obstructed justice";

- being "a hack 'defense Judge' lacking integrity," and "a hack 'drinking buddy' of the
  defense attorney Jack McMahon";

- "favor[ing] criminal defendants, including serial killers of new born babies like
  Kermit Gosnell";

- being "a hack that attempted to cover-up the Gosnell crimes, and tried to conceal the
  trial from the public by 'banning' cameras in the courtroom";

- being "a biased judge whose selection was opposed by the prosecutors, who
  expressed 'concern' and 'dismay' over his selection"; and

- "being a drunk, broken down hack Judge who sympathized with a mass murderer of
  Hitleresque proportions."

Compl. ¶¶ 187, 189-90. Based on that flawed interpretation of the Book's portrayal of him,

Judge Minehart attempts to state claims for defamation (Count I), false light invasion of privacy

(Count II), a mandatory permanent injunction (Count III),[4] and civil conspiracy (Count IV). His

Complaint seeks compensatory damages, punitive damages, and an injunction, dictating the

terms on which he may be depicted both in future editions of the Book and in a future movie

---

[4] As this Court has held, there is no cognizable cause of action for a "permanent
injunction." Feb. 14, 2018 Explanation and Order at 5 n.4, Dkt. 40.

based on the Book, including that those works include "[a] list selected by Plaintiff of all the trials he has presided over and his other professional accomplishments." Compl. Count III.

**ARGUMENT**

Defendants are protected from Judge Minehart's lawsuit under California's anti-SLAPP law and seek the recourse provided by that statute for being compelled to defend themselves against his baseless claims. First, under Pennsylvania's choice-of-law rules, California's interest in immunizing its residents from – and providing them with a remedy for – meritless lawsuits that target their speech on matters of public interest warrants applying California law on this discrete issue, even if Judge Minehart's claims are substantively evaluated under Pennsylvania law. Second, applying California's anti-SLAPP law, Defendants qualify for relief under the statute because this lawsuit arises out of speech on a matter of public interest, and each of Judge Minehart's claims fails as a matter of law.

I.  **THE PROTECTIONS OF CALIFORNIA'S ANTI-SLAPP LAW APPLY TO DEFENDANTS.**

   A.  **California's Anti-SLAPP Law**

California's anti-SLAPP law reflects that state's strong policy of protecting its residents from meritless lawsuits that target speech on matters of public interest. The law provides that a defendant subject to a "cause of action . . . arising from any act of that person in furtherance of the person's right of . . . free speech under the United States Constitution or the California Constitution in connection with a public issue" may file "a special motion to strike." Cal. Civ. Proc. Code § 425.16(b)(1). Once the moving defendant has demonstrated that the claims at issue arise out of speech on a matter of public interest, the burden shifts to the plaintiff to "establish[] that there is a probability that the plaintiff will prevail on the claim[s]." *Id.* If the plaintiff cannot make that showing, then the special motion to strike must be granted, and – subject to

exceptions not applicable here – the moving defendant shall be awarded "his or her attorney's fees and costs." *Id.* § 425.16(c)(1)-(2).

As the Ninth Circuit has explained, "[t]he anti-SLAPP statute was enacted to allow for early dismissal of meritless first amendment cases aimed at chilling expression through costly, time-consuming litigation." *Batzel*, 333 F.3d at 1024 (quoting *Metabolife Int'l, Inc. v. Wornick*, 264 F.3d 832, 839 (9th Cir. 2001)). In other words, "[t]he point of the anti-SLAPP statute is that you have a right *not* to be dragged through the courts because you exercised your constitutional rights." *Varian Med. Sys., Inc. v. Delfino*, 35 Cal. 4th 180, 193 (2005) (citation omitted). Because the purpose of the law is to shield defendants from the burdens imposed by lawsuits that attack protected speech, the protections the law provides are "in the nature of an immunity from suit." *DC Comics v. Pac. Pictures Corp.*, 706 F.3d 1009, 1013 (9th Cir. 2013); *see also Batzel*, 333 F.3d at 1025 ("a defendant's rights under the anti-SLAPP statute are in the nature of immunity: They protect the defendant from the burdens of trial, not merely from ultimate judgments of liability"). This protection is bolstered by awarding attorney's fees to prevailing writers and speakers subjected to the burden of defending against meritless claims. *See, e.g.*, *Equilon Enters., LLC v. Consumer Cause, Inc.*, 52 P.3d 685, 691-92 (Cal. 2002).

## B. Pennsylvania's Choice-of-Law Rules

In determining whether to apply California's anti-SLAPP law in this case, this Court applies Pennsylvania's choice-of-law rules. *See Specialty Surfaces Int'l, Inc. v. Cont'l Cas. Co.*, 609 F.3d 223, 229 (3d Cir. 2010) (citing *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941)). Under those rules, the first step is to assess whether there is an actual conflict of law with respect to a particular issue – that is, "'whether these states would actually treat this issue any differently.'" *Hammersmith v. TIG Ins. Co.*, 480 F.3d 220, 230 (3d Cir. 2007) (quoting *Air*

*Prods. And Chems., Inc. v. Eaton Metal Prods. Co.*, 272 F. Supp. 2d 482, 490 n.9 (E.D. Pa. 2003)).

Here, while California's anti-SLAPP statute provides immunity to its residents for claims arising from protected speech on matters of public interest and awards attorney's fees to residents subjected to meritless defamation and false light claims, Pennsylvania's anti-SLAPP law provides immunity to its residents for only one particular kind of speech: communications to a government agency regarding "enforcement or implementation of an environmental law or regulation." 27 Pa. Cons. Stat. § 8302(a); *see also Pennsbury Village Assocs., LLC v. McIntyre*, 11 A.3d 906, 912-16 (Pa. 2011) (describing scope of Pennsylvania's anti-SLAPP law). Thus, with respect to this issue, there is an actual conflict between California law and Pennsylvania law, which requires further analysis.

The Third Circuit has explained that when an actual conflict of law exists, "Pennsylvania applies a 'flexible rule which permits analysis of the policies and interests underlying the particular issue before the court' and directs courts to apply the law of the state with the 'most interest in the problem.'" *Specialty Surfaces Int'l*, 609 F.3d at 229 (quoting *Hammersmith*, 480 F.3d at 227). This inquiry requires "an analysis of the extent to which one state rather than another has demonstrated, by reason of its policies and their connection and relevance to the matter in dispute, a priority of interest in the application of its rule of law." *Wolfe v. McNeil-PPC, Inc.*, 703 F. Supp. 2d 487, 493 (E.D. Pa. 2010) (quoting *Normann v. Johns-Manville Corp.*, 593 A.2d 890, 893 (Pa. Super. 1991)). As the Third Circuit has explained, "[t]he policy underlying a state's law is relevant only to the extent it is implicated by that state's contacts with the litigation." *Taylor v. Mooney Aircraft Corp.*, 265 F. App'x 87, 90-91 (3d Cir. 2008).

In undertaking this analysis, a court must determine whether the conflict is a "false" conflict or a "true" conflict. *Hammersmith*, 480 F.3d at 230 (citation omitted). "[A] 'false conflict' exists 'if only one jurisdiction's governmental interests would be impaired by the application of the other jurisdiction's laws.'" *Id.* at 229 (quoting *Lacey v. Cessna Aircraft Co.*, 932 F.2d 170, 187 (3d Cir. 1991)). If the issue involves a false conflict, "the court should 'apply the law of the state whose interests would be harmed if its laws were not applied.'" *Id.* (citation omitted).

On the other hand, a true conflict exists if "both states' interests are implicated on the facts of this case" and both state's interests "'would be impaired if their law were not applied.'" *Id.* at 230, 232 (citation omitted). In that situation, the court should "apply the law of the state with the 'most significant contacts or relationships with the particular issue.'" *Id.* (citation omitted). To make that assessment, the court "'must weigh the contacts on a qualitative scale according to their relation to the policies and interests underlying the [particular] issue.'" *Id.* at 231 (citation omitted, alteration in original); *see also Racicot v. Erie Ins. Exch.*, 881 A.2d 871, 874 (Pa. Super. 2005) ("[M]ere counting of [a particular state's] contacts is not what is involved. The weight of a particular state's contacts must be measured on a qualitative rather than a quantitative scale." (quoting *Cipolla v. Shaposka*, 267 A.2d 854, 856 (Pa. 1970)).[5]

Significantly, Pennsylvania's "choice of law analysis is issue-specific," permitting different states' laws to apply to different issues in the same case. *Berg Chilling Sys., Inc. v. Hull Corp.*, 435 F.3d 455, 462 (3d Cir. 2006). Thus, "different states' laws may apply to different issues in a single case, a principle known as 'depecage.'" *Id.* (citing *Compagnie des*

---

[5] If neither state's interest in its law would be harmed, then the conflict is considered "unprovided for," and "the court should apply 'the principle of *lex loci delicti*, the law of the place of the wrong.'" *Taylor*, 265 F. App'x at 91.

*Bauxites v. Argonaut-Midwest Ins. Co.*, 880 F.2d 685, 691 (3d Cir. 1989)). Under "the principle of depecage," a "court's application of one state's law to one issue in a case does not preclude the court from deciding that another state's law governs another issue in the same case." *Zavecz v. Yield Dynamics, Inc.*, 179 F. App'x 116, 120 (3d Cir. 2006). In particular, "Pennsylvania's choice-of-law methodology is . . . focused on a state's relevant contacts *with the particular dispute at issue*, and not on a state's relevant contacts with the litigation as a whole." *Harrisburg Auth. v. CIT Capital USA, Inc.*, 716 F. Supp. 2d 380, 389 n.16 (M.D. Pa. 2010) (emphasis added).

Because Pennsylvania's choice-of-law rules require an issue-specific analysis, when analyzing which state's law applies to a defendants' immunity from suit and entitlement to attorney's fees, the inquiry focuses on California's and Pennsylvania's interests in that specific issue. Thus, the question of what law governs Judge Minehart's *claims* must be analyzed separately from the question of which state's anti-SLAPP protections may apply in response to those claims. Indeed, courts in Pennsylvania routinely consider as separate issues (a) which state law governs the elements of a claim and (b) which state law governs the immunities or defenses available with respect to that claim, applying the law of the state with the strongest interest in the application of its law to each discrete issue.

The Pennsylvania Supreme Court's analysis in *McSwain v. McSwain*, 215 A.2d 677 (Pa. 1966), provides an apt example. There, following a car accident involving Pennsylvania residents in Colorado that resulted in the death of their child, plaintiff Dorothea McSwain sued her husband Herbert McSwain in Pennsylvania under the Colorado Death Act. *Id.* at 678-79. The Philadelphia Court of Common Pleas dismissed the claim in light of Pennsylvania's "interspousal immunity" statute, even though Colorado law permitted such claims between

10

spouses. *Id.* On appeal, the Supreme Court weighed "the respective interests of Colorado and Pennsylvania in the effect to be given the marital relationship on [plaintiff]'s right to proceed against her husband." *Id.* at 682. It held that not applying Pennsylvania's interspousal immunity would harm the state's interest in "foreclosing litigation as an avenue for engendering friction between spouses," while Colorado's interests "would not be disserved by the application of the Pennsylvania rule" in a case involving Pennsylvania residents. *Id.* at 682-83. Thus, even though plaintiff's claim arose under Colorado law, the Court held that Pennsylvania law should control whether the defendant could assert an immunity from that claim because of the particular strength of the interest Pennsylvania expressed in creating the immunity.[6] As explained below, that same logic favors applying California's anti-SLAPP law in this case.

> **C.      This Issue Presents A False Conflict Because California's Interest Would Be Harmed If Its Law Were Not Applied To The Anti-SLAPP Issue, While Pennsylvania's Interest In Its Law Would Not Be Affected.**

California enacted its anti-SLAPP law to protect against "a disturbing increase in lawsuits brought primarily to chill the valid exercise of the constitutional right[] of freedom of speech." Cal. Civ. Proc. Code § 425.16(a). As the text of the statute itself makes clear, in enacting the law, California expressed its strong policy that "it is in the public interest to encourage continued participation in matters of public significance, and that this participation should not be chilled through abuse of the judicial process." *Id.* The law effectuates that policy by "allow[ing] courts

---

[6] *See also, e.g.*, *Zavecz*, 179 F. App'x at 121 (recognizing that the  trial court "was not precluded from finding that California law applied to the attorney fee issue by previously having chosen Pennsylvania law in the same case" and holding that California law, which barred the fee award, applied to that issue); *Wolfe*, 703 F. Supp. 2d at 493-95 (applying Maine law to "defendants' affirmative defense of comparative negligence," even though the causes of action themselves were governed by Pennsylvania law, based on the court's conclusion that "Maine has a greater interest in having its law applied" to that issue); RESTATEMENT (SECOND) OF CONFLICTS § 145, cmt. d ("the local law of the state where the parties are domiciled, rather than the local law of the state of conduct and injury, may be applied to determine whether one party is immune from tort liability to the other . . . .").

to promptly expose and dismiss meritless and harassing claims seeking to chill protected expression." *Mindys Cosmetics, Inc. v. Dakar*, 611 F.3d 590, 595 (9th Cir. 2010) (citation and internal marks omitted). It further provides for an award of attorney's fees to the prevailing party, which, as the California Supreme Court has explained, "discourag[es], insofar as fees may be shifted, a plaintiff's meritless claims." *Equilon Enters.*, 52 P.3d at 691 (citation and internal marks omitted). In fact, it has long been recognized that the "allowance of mandatory attorney fees to the prevailing defendant . . . reflect[s] the statutory purpose to prevent and deter SLAPP suits by ending them early and without great cost to the SLAPP target." *Britts v. Superior Court*, 52 Cal. Rptr. 3d 185, 192 (Cal. Ct. App. 2006). As one federal court has observed, "California's anti-SLAPP statute provides a mechanism for a defendant to strike civil actions or claims brought primarily to chill the exercise of free speech," and the legislation provides for a fee award "[i]n order to deter such chilling." *Kearney v. Foley & Lardner*, 553 F. Supp. 2d 1178, 1181 (S.D. Cal. 2008); *accord, e.g.*, *Smith v. Fireside Thrift Co.*, 2007 WL 2729329, at *2 (N.D. Cal. Sept. 18, 2007) (recognizing purpose of anti-SLAPP statute and holding that its protections apply to corporate entities).

Thus, if Defendants are denied access to the protections of California's anti-SLAPP law, that state's interests would be significantly harmed. Its residents have written and published a book that unquestionably addresses a matter of significant public concern. *See infra* at 18-20. Yet, if they were denied the immunity and remedy available to them under California law, they would be forced to incur significant expenses without recourse – the very harm the law was intended to alleviate. Accordingly, California's policies on this issue are such that it would "object strongly to the absence of a robust anti-SLAPP regime" in connection with claims brought against its residents. *Sarver v. Chartier*, 813 F.3d 891, 899 (9th Cir. 2016) (using New

Jersey's choice of law rules to apply California's anti-SLAPP law to a lawsuit brought by a New Jersey plaintiff against California defendants).[7]

In contrast, there is no strong countervailing Pennsylvania interest in *not* applying California's law. Pennsylvania's interest with respect to this lawsuit is in ensuring that, if its resident, Judge Minehart, has meritorious claims, he can pursue them and be compensated for any injuries. *See, e.g.*, *Wilson v. Slatalla*, 970 F. Supp. 405, 414 (E.D. Pa. 1997) (explaining that a plaintiff's home state has an interest "in vindicating plaintiff's good name and providing compensation for harm caused by the defamatory publication," and that state's law usually governs the substance of such claims for that reason) (citation omitted). That interest would not be compromised by the application of California law to the anti-SLAPP issue because Defendants are entitled to relief under California's anti-SLAPP law only if Judge Minehart has failed to advance meritorious claims under *Pennsylvania* tort law. *See, e.g.*, *infra* at 20-21 (analyzing whether Judge Minehart can meet his burden to show a probability of prevailing on the merits).

In addition, the interest served by Pennsylvania's anti-SLAPP law is not implicated in this case. That law provides protection for Pennsylvania residents to communicate freely with the government about environmental issues. *See* 27 Pa. Cons. Stat. § 8302; *Pennsbury*, 11 A.3d at 912-13 (noting that the Pennsylvania anti-SLAPP act's "purpose is to protect those persons targeted by frivolous lawsuits based on their constitutionally protected government petitioning activities, and encourage and open the lines of communication to those government bodies

---

[7] In *Sarver*, the court applied New Jersey's choice-of-law rules, even though it was on appeal from a California district court, because the case was originally filed in the District of New Jersey, and then transferred to the Central District of California. 813 F.3d at 898. New Jersey assesses conflicts of law by considering which state's law has the most significant relationship to a particular issue. *See id.*

clothed with the authority to correct or enforce our environmental laws and regulations")

(internal marks omitted) (quoting *Penllyn Greene Assocs., L.P. v. Clouser*, 890 A.2d 424, 433-34

(Pa. Commw. 2005) (internal marks and alterations omitted)). That interest would not be

harmed in any way by the application of California's anti-SLAPP law here.

Thus, as in *McSwain*, this is a case where the interests of the defendants' home state

would be substantially impaired by not applying that state's laws to the immunity issue, while

the interests of the state that does not offer the immunity in this circumstance (here,

Pennsylvania) would be unaffected. Just like Pennsylvania's strong interest in interspousal

immunity at issue in *McSwain*, applying California's anti-SLAPP statute in this case would

"recognize[] and give[] effect to that legislative mandate." *McSwain*, 215 A.2d at 683. And,

Pennsylvania's "interest would not be disserved by the application of" California law, as

Pennsylvania's interest in this litigation and in its own anti-SLAPP law "would not be adversely

affected under the facts of the instant case." *Id.*; *see also, e.g.*, *Dick v. Lambert*, 472 F. Supp.

560, 562 (M.D. Pa. 1979) (applying Maryland law on availability of certain immunity in civil

litigation brought by Pennsylvania resident because "Maryland's interest is implicated here,"

whereas "Pennsylvania has no interest in its laws being applied").

> **D.** **California Law Should Apply To The Anti-SLAPP Issue Even If It Is Found To Create A True Conflict With Pennsylvania's Anti-SLAPP Law.**

California law should apply to the anti-SLAPP issue even if this Court were to find that

there is a true conflict with respect to the two states' anti-SLAPP statutes in this case, because

California is the state "with the most significant contacts . . . with th[is] particular issue" and thus

"the greater interest in the application of its law." *Hammersmith*, 480 F.3d at 230-31 (citation

and internal marks omitted). Pennsylvania's contacts – a Pennsylvania plaintiff who presided

over the trial of the Pennsylvania criminal who is the focus of the Book – have no relevance to

Pennsylvania's anti-SLAPP statute, which addresses residents' ability to petition the government about environmental issues.

In contrast, California's contacts with this litigation are tied directly to the interest served by its anti-SLAPP statute. California is where the authors live, where Salem and Regnery are based, and where the Book was written.[8] These California contacts relate strongly "to the policies and interests underlying the particular issue." *Id.* at 231 (citation, internal marks, and alteration omitted). That state "has expressed a strong interest in enforcing its anti-SLAPP law to 'encourage continued participation in matters of public significance' and to protect against 'a disturbing increase in lawsuits brought primarily to chill the valid exercise' of constitutionally protected speech." *Sarver*, 813 F.3d at 899 (quoting Cal. Civ. Proc. Code § 425.16(a)). And, it has protected that interest by enacting a law designed to ensure that its residents are not forced to incur great costs when they are named in meritless suits arising from their speech on matters of public concern, as the plaintiffs who decide to pursue such meritless claims are required to pay the prevailing defendants' attorney's fees and costs. *See supra* at 6-7, 11-13 (citing cases).

The purpose of California's law would be undermined if its residents could not reasonably rely on their state's anti-SLAPP law to apply when they write and speak about matters of public concern merely because that speech is disseminated throughout the country. California writers and speakers should be able to rely on the protection of their state's law when they write and speak and should expect to receive the full protections of the California anti-

---

[8] Though Salem is incorporated in Delaware and Regnery is incorporated in Ohio, both maintain principal places of business in California. Under Pennsylvania's choice-of-law factors, "a corporation's principal place of business is a more important contact than the place of incorporation, and this is particularly true in situations where the corporation does little, or no, business in the latter place." RESTATEMENT (SECOND) OF CONFLICTS § 145, cmt. e; *see also* 28 U.S.C. § 1332(c)(1); *Inman v. Technicolor USA, Inc.*, 2011 WL 5829024, at *4 (W.D. Pa. Nov. 18, 2011) (Pennsylvania courts look to factors set forth in the Second Restatement of Conflict of Laws when conducting choice-of-law analysis).

SLAPP statute if a meritless cause of action arises out of such expression – no matter where that claim might be filed. *See, e.g.*, *Taylor*, 265 F. App'x at 94 (applying Georgia statute of repose because that state's "interest is implicated anytime a party to such a suit is a Georgia resident").

The court engaged in this exact analysis in *Diamond Ranch Academy, Inc. v. Filer*, 117 F. Supp. 3d 1313 (D. Utah 2015), a case involving a defamation lawsuit by a Utah plaintiff against a California defendant where the court identified a true conflict between California's anti-SLAPP law and Utah's anti-SLAPP law, as they "place significantly different burdens of proof on a party seeking protection under the statute." *Id.* at 1320. The court held that California law governed the anti-SLAPP issue, even though both parties agreed that Utah defamation law governed the underlying claim. Applying Utah's "most significant relationship" test to the choice-of-law issue, the court explained that "the residence of the party seeking protection under the anti-SLAPP law . . . has great weight in the analysis." *Id.* at 1321, 1324. On that basis, the court concluded that the defendant's "California residence, California's strong interest in protecting its citizens' free speech activities," and the fact that "much of the speech likely originated in California, all weigh strongly in favor of applying California's, not Utah's, anti-SLAPP law." *Id.* at 1324. So too here. For all the same reasons discussed in *Diamond Ranch*, even if a true conflict is deemed to exist, California law should apply to the anti-SLAPP issue in this case.

Applying California law to Defendants' anti-SLAPP motion here, while nonetheless evaluating Judge Minehart's claims under Pennsylvania law, is consistent with the approach that courts around the country have taken when confronted with this same issue. In *Chi v. Loyola University Medical Center*, 787 F Supp. 2d 797 (N.D. Ill. 2011), which involved an Arizona plaintiff suing Illinois defendants for defamation, the court applied Illinois's anti-SLAPP law,

even though it held that Arizona law governed the defamation claim. In reaching this conclusion, the court noted that "[t]he fact that Arizona law governs [plaintiff's] defamation claim is not dispositive of th[e] question" of which law governs the anti-SLAPP issue. *Id.* at 803. That is because "whether a statement is defamatory or invades the right to privacy is distinct from the issue of whether the statement is privileged." *Id.* (citation omitted). Ultimately, the court concluded that it was appropriate to apply Illinois's anti-SLAPP law because "Defendants are citizens of Illinois, and their allegedly defamatory speech originated here," and, therefore, "Illinois thus has a strong interest in having its own anti-SLAPP statute applied to the issue of whether defendants are immune from liability for defamation." *Id.*

In *Global Relief Foundation v. New York Times Co.*, 2002 WL 31045394, *1, 11 (N.D. Ill. Sept. 11, 2002), which involved a defamation lawsuit by an Illinois plaintiff against multiple media defendants, including three California residents, the court applied California law to the anti-SLAPP motion filed by the three California defendants. It did so on the ground that, while "Illinois has a greater interest in the application of its laws to issues underlying the defamation claim, . . . California has a great interest in determining how much protection to give California speakers." *Id.* at *11.

Likewise, in *Francis v. Wynn Las Vegas, LLC*, 557 F. App'x, 662 (9th Cir. 2014), which involved a Nevada plaintiff suing a California defendant, the court applied Nevada law to the plaintiff's causes of action, but permitted the defendant to rely on California's anti-SLAPP law because "applying Nevada's [anti-SLAPP] law would improperly limit California's expansive defendant-friendly policy." *Id.* at 664.

In each of these cases, the decision to apply the law of the defendant's home state to the anti-SLAPP issue – even while evaluating the defamation claims themselves under the law of the

plaintiff's home state – hinged on an acknowledgement of the superior interest of the defendant's state in the application of its anti-SLAPP law. Here, California's substantial interest in the application of its anti-SLAPP law is well established, whereas none of Pennsylvania's governmental interests would be harmed by the application of California law on that discrete topic. Accordingly, California law should apply to this issue, and Defendants should be permitted to avail themselves of the immunity and remedy afforded to them by the California anti-SLAPP statute.[9]

## II.   DEFENDANTS ARE ENTITLED TO RELIEF UNDER CALIFORNIA'S ANTI-SLAPP LAW.

In applying California's anti-SLAPP law, courts "'engage in a two-part inquiry.'" *Mindys Cosmetics*, 611 F.3d at 595 (quoting *Vess*, 317 F.3d at 1110). "First, the defendant must make a prima facie showing that the plaintiff's suit arises from an act in furtherance of the defendant's rights of petition or free speech." *Id.* (internal marks omitted). "[O]nce the defendant has made a prima facie showing, the burden shifts to the plaintiff to demonstrate a probability of prevailing on the challenged claims." *Id.*

### A.   Defendants Have Made Their Prima Facie Showing

This lawsuit plainly arises out of activity within the purview of California's anti-SLAPP law. The statute defines "act[s] in furtherance of a person's right of petition or free speech under the United States or California Constitution in connection with a public issue" to include

---

[9] The substantive immunity and remedy provided by California's anti-SLAPP law apply with equal force in federal court under the *Erie* doctrine. *See, e.g.*, *Price v. Stossel*, 620 F.3d 992, 999 (9th Cir. 2010) (noting that Courts "have repeatedly held that California's anti-SLAPP statute can be invoked by defendants who are in federal court on the basis of diversity jurisdiction"); *Makaeff v. Trump Univ., LLC*, 715 F.3d 254, 263-64 (9th Cir. 2013) (applying California's anti-SLAPP law in federal court); *Thomas v. Fry's Elecs., Inc.*, 400 F.3d 1206, 1207 (9th Cir. 2005) (same); *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1109 (9th Cir. 2003) (same); *Diamond Ranch Academy,* 117 F. Supp. 3d at 1317-19 (same); *Gilead Scis., Inc. v. Abbott Labs., Inc.*, 2015 WL 1191129, at *5-9 (D. Del. Mar. 13, 2015) (same).

"conduct in furtherance of the exercise of . . . the constitutional right of free speech in connection with a public issue or an issue of public interest."  Cal. Civ. Proc. Code § 425.16(e).  Each of Judge Minehart's four claims expressly arises out of the publication of the Book.  *See, e.g.*, Compl. ¶ 188 ("the Gosnell Book defamed Judge Minehart"); *id.* ¶ 194 ("the Defendants' Gosnell Book has cast Judge Minehart in a horrible false light"); *id.* ¶ 203 (seeking injunctive relief due to an allegedly "false depiction in the Gosnell Book"); *id.* ¶ 217 (contending that Judge Minehart was harmed by "Defendants' publication, marketing, promotion, and distribution of the Gosnell Book").  And the Book itself addresses matters of public interest:  the story of Gosnell's crimes, arrest, trial, and sentencing, and the national conversation about abortion.  *See, e.g.*, *Shepard v. Miler*, 2010 WL 5205108, at *7 (E.D. Cal. Dec. 15, 2010) ("Plaintiff's claims . . . arise from defendants' research and publication of a book about mental health issues and therapy, which is an act in furtherance of defendants' right of free speech in connection with an issue of public interest."); *see also Cox Broad. Corp. v. Cohn*, 420 U.S. 469, 492 (1975) ("The commission of crime, prosecutions resulting from it, and judicial proceedings arising from the prosecutions . . . are without question events of legitimate concern to the public."); *Planned Parenthood of Cent. N.J. v. Farmer*, 220 F.3d 127, 130 (3d Cir. 2000) (referring to "the abortion issue, and the emotionally charged public debate that issue engenders").

Because each of Judge Minehart's claims arises out of an act in furtherance of Defendants' right of free speech in connection with an issue of public interest, each claim falls within the scope of the anti-SLAPP law.  *See, e.g.*, *Medifast, Inc. v. Minkow*, 2011 WL 1157625, at *14 (S.D. Cal. Mar. 29, 2011) (granting anti-SLAPP motion as to plaintiff's claim for "civil conspiracy to defame"), *aff'd in relevant part*, 577 F. App'x 706 (9th Cir. 2014), *as amended* (July 14, 2014); *Stutzman v. Armstrong*, 2013 WL 4853333, at *21-22 (E.D. Cal. Sept 10, 2013)

(granting anti-SLAPP motion in class action alleging violations of California consumer protection and false advertising statutes, as well as common-law claims of misrepresentation, fraud, and deceit against author and publisher of book).

Thus, Defendants have made their prima facie showing under the first step in the anti-SLAPP analysis, and the law requires Judge Minehart to demonstrate a "probability" of prevailing on his claims. He cannot meet that burden.

**B.** **Judge Minehart Cannot Meet His Burden Of Showing A Probability Of Prevailing On His Claims**

Where, as here, an "anti-SLAPP motion is based on legal deficiencies in the complaint, the court must 'determine the motion in a manner that complies with the standards set by Federal Rules of Civil Procedure 8 and 12.'" *Gilead Scis.*, 2015 WL 1191129, at *3 (citing *Bulletin Displays, LLC v. Regency Outdoor Advert., Inc.*, 448 F. Supp. 2d 1172, 1180 (C.D. Cal. 2006)). In this case, as set out in greater detail in Defendants' contemporaneously filed joint motion to dismiss pursuant to Rule 12(b)(6), which is incorporated here in its entirety, each of Judge Minehart's asserted causes of action fails as a matter of law. In particular:

- The defamation and false light claims fail because (a) the Book is not reasonably capable of the implications Judge Minehart alleges, (b) the specific passages he challenges are not defamatory or highly offensive, are not materially false, and/or constitute subjective opinion, and (c) Judge Minehart has failed to adequately plead that the challenged passages were published with actual malice;

- The permanent injunction "claim" fails because it is a remedy, not a cause of action, Feb. 14, 2018 Explanation and Order at 5 n.4, Dkt. 40; and

- The civil conspiracy claim fails for the reasons this Court has already found in denying Plaintiff's Motion to Remand and dismissing Pennsylvania Media

Associates, Inc. *See id.* Specifically, the Court based its decision on the finding that "Judge Minehart . . . explicitly disclaimed that any purpose of the civil conspiracy was to injure Judge Minehart." *Id.* at 4. Because Plaintiff only pled one count of civil conspiracy, this finding is equally fatal to the civil conspiracy allegations against the remaining defendants. *See Sarpolis v. Tereshko*, 625 F. App'x 594, 601 (3d Cir. 2016) ("malice requires that the conspirators act with the sole purpose of injuring the plaintiff").

Accordingly, Judge Minehart cannot carry his burden of demonstrating that he has a probability of prevailing on his claims. Thus, the Complaint should be stricken, and Defendants "shall be entitled to recover [their] attorney's fees and costs." Cal. Civ. Proc. Code § 425.16(c)(1)-(2).

## CONCLUSION

For the reasons set forth above, Defendants respectfully request that their special motion to strike pursuant to California's anti-SLAPP law be granted, Judge Minehart's Complaint be stricken, and they be awarded their attorney's fees and costs in defending against this meritless lawsuit.[10]

---

[10] Defendants will submit fee petitions should the Court grant the instant Motion.

Respectfully submitted,

**FOX ROTHSCHILD LLP**                              **BALLARD SPAHR LLP**


By: /s/ Michael K. Twersky                          By: /s/ Michael Berry
Michael K. Twersky                                  Michael Berry
2000 Market Street, 20th Floor                      Paul J. Safier
Philadelphia, PA 19103                              Elizabeth Seidlin-Bernstein
Telephone: (215) 299-2000                           1735 Market Street, 51st Floor
Fax: (212) 299-2150                                 Philadelphia, PA 19103
mtwersky@foxrothschild.com                          Telephone: (215) 988-9773
                                                    Fax: (215) 864-8999
Jonathan D. Christman                               berrym@ballardspahr.com
Benjamin H. McCoy                                   safierp@ballardspahr.com
10 Sentry Parkway                                   seidline@ballardspahr.com
Suite 200, P.O. Box 3001
Blue Bell, PA 19422                                 *Attorneys for Defendants Ann McElhinney,*
Telephone: (610) 397-6500                           *Phelim McAleer, and Ann & Phelim Media*
Fax: (610) 397-0450
jchristman@foxrothschild.com
bmccoy@foxrothschild.com

*Attorneys for Defendants*
*Salem Media Group, Inc.,*
*and Regnery Publishing*

Dated:  May 21, 2018